UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **LAWRENCE BURNS, SR.** | **12-10906** |
| **BARBARA BURNS** | SECTION A |
| DEBTORS | CHAPTER 13 |

## REASON FOR DECISION

This matter came before the Court on the Objection to Exemption filed by the trustee ("Trustee").[1] When Debtors filed for bankruptcy relief, Mr. Burns included in his Schedule of Assets and Liabilities a lawsuit. He also claimed a corresponding exemption in the suit. Trustee objected to the exemption on a timely basis. After the Objection was filed, Debtors moved to convert their case from one pending under chapter 7 to chapter 13. After the chapter 13 Trustee was substituted for the original movant, hearing on the Objection was held on July 24, 2012, after which the Court took the matter under advisement.

**I. Facts:**

Mr. Burns is 68 years old and suffers from colon cancer caused by exposure to asbestos containing products. Prepetition, Mr. Burns filed suit against numerous asbestos producers and users for various damages, including lost wages.[2] Postpetition, a $7,257.68 settlement was

---

[1] Pleading 18. The Objection to Exemption was filed by the Chapter 7 trustee, and the Chapter 7 trustee was present at the first hearing which took place on June 12, 2012. On that day, the case was also converted to a case under Chapter 13, and the Court continued the hearing on the Objection to Exemption to allow the Chapter 13 trustee to argue and brief the matter. Pleading 22. The continued hearing took place on July 24, 2012, at which time the matter was taken under advisement.

[2] *Vinas, et al v. Anco Insulations, Inc., et al*, case no. 505978, 19th Judicial District Court, Parish of East Baton Rouge. Pleading 54.

reached.[3] A portion of the settlement is reimbursement for prepetition wages lost as a result of Mr. Burn's medical condition. Debtors' allege that this portion is exempt from the estate because it is a substitute for lost exempt property.[4] Trustee disagrees arguing that because Mr. Burns no longer works, the proceeds do not constitute "active earnings" and are not exempt.

## II. Law and Analysis

11 U.S.C. § 522 exempts from the estate certain property of a debtor. The statute's purpose is to provide a debtor with minimal assets necessary to maintain subsistence following relief from prepetition debt.[5] Congress has determined that exempt assets are crucial to a debtor's fresh start.[6] State law exemption statutes codify a public policy which protects some assets from seizure so that the debtor or his family will not become a burden on the state.[7]

The Bankruptcy Code contains two (2) options for identifying exempt property. The first is a federal list contained in § 522 itself. The second allows, at the option of a state, the adoption of state law exemptions. Louisiana has elected to utilize state law exemptions in bankruptcy cases filed by Louisiana residents.[8]

---

[3] *See* Motion to Convert to Chapter 13. Pleading 20, ¶ 2.

[4] The schedules claim an exemption on the lawsuit. Debtors narrowed the property claimed as exempt in subsequent pleadings. *See,* Motion to Convert to Chapter 13. Pleading 20.

[5] *In re Mitchell*, 80 B.R. 372, 374 (Bankr.W.D.Tex. 1987). *See also, In re Davis*, 170 F.3d 475, 478 (5th Cir. 1999).

[6] *In re Butcher*, 189 B.R. 357 (Bankr. D.Md. 1995) *aff'd* 125 F.3d 238 (4th Cir. 1997); *In re Wright*, 156 B.R. 549 (Bankr.N.D. Ill. 1992); *In re Johnson*, 57 B.R. 635 (Bankr.N.D.Ill.1986); *In re Dipalma*, 24 B.R. 385 (Bankr.D.Mass.1982).

[7] *See, e.g., Laurencic v. Jones*, 180 So.2d 803, 805 (La.App. 4 Cir. 1965).

[8] La. R.S. § 13:3881(B)(1). Lost future wages are exempt under 11 U.S.C. § 522(d)(11) of the Bankruptcy Code, but because Louisiana has opted out of the federal exemptions, the Court must examine Louisiana law.

Louisiana exempts from seizure 75% of "disposable earning for any week."[9] "Disposable earnings" is defined under Louisiana law as:

> [T]hat part of the earnings of an individual remaining after the deduction from those earnings of any amounts required by law to be withheld and which amounts are reasonable and are being deducted in the usual course of business at the time the garnishment is served upon the employer for the purpose of providing benefits for retirement, medical insurance coverage, life insurance coverage and which amounts are legally due or owed to the employer in the usual course of business at the time the garnishment is served.[10]

If the proceeds of the settlement are in payment of wages lost as a result of the defendant's conduct, Debtors argue that they are exempt under La. R.S. §13:3881. Trustee argues that the proceeds of the lawsuit are not wages, but simply the products of an incorporeal right not exempt under Louisiana law. Debtors counter that the proceeds of a suit for damages should be considered exempt because they substitute for the lost exempt property. Trustee argues that even if a portion of the damages are attributable to lost wages, the wages are merely passive income, not wages exempt under La. R.S. §13:3881.

---

[9] LA R.S. §13:3881(A)(1)(a).

[10] LA R.S. §13:3881(A)(1)(b).

**The Nature of Damages Paid in Restitution for Loss of an Exempt Asset**

When Debtors filed for bankruptcy relief, Mr. Burns held a cause of action against various defendants for lost wages. That cause of action is an incorporeal right under Louisiana law. Incorporeal rights are not, in and of themselves, exempt from seizure under Louisiana law. However, Louisiana jurisprudence has found that a right to payment or reimbursement for the loss of exempt property is also exempt.

In *Thompson-Richie & Co. v. Graves*,[11] the Louisiana Supreme Court addressed whether or not insurance proceeds payable on a homestead's loss were entitled to protection from seizure. The Louisiana Supreme Court acknowledged that the question was *res nova*, and reasoned:

> Since the homestead statutes are to be liberally construed to protect a homestead to which the debtor is justly entitled, funds realized from the insurance of exempt premises are themselves exempt, as they do not represent a mere personal indemnity, but the homestead itself, and the money takes the place of the property destroyed.[12]

The Louisiana Supreme Court emphasized that insurance proceeds delivered on the loss of a homestead were in every sense a substitute for the asset itself. As a result, to allow the seizure of those funds would by "mere technical evasion, pervert" the purpose of the exemption statute.[13]

Under the above jurisprudence, the proceeds of settlement retain the nature and character of the property they replace. Trustee argues that while this may be correct, the proceeds are actually "passive earnings" rather than active wages because Mr. Burns is not employed. As a result, the

---

[11] *Thompson-Richie & Co. v. Graves,* 167 La. 1024, 120 so. 634 (1925).

[12] *Id.*

[13] *Id.* at 635.

proceeds are not protected by La. R.S. §13:3881. Trustee's position finds support in the case of *In re Ballard*.[14]

*Ballard* grappled with the nature and character of lawsuit proceeds. Rather than characterize them based on the property interests they replace, it tied them to the character of the property from which they were derived, the cause of action. Because causes of action are not generally exempt from seizure under Louisiana law, the *Ballard* Court reasoned that a lawsuit's proceeds would not be exempt. This Court disagrees with *Ballard's* interpretation of Louisiana law.

By analogizing the proceeds of a lawsuit to "investment income on capital," the *Ballard* Court found the "earnings" were "passive." It then interpreted La. R.S.§ 13:3881 as only applicable to "active" earnings or those produced by the debtor through his industry rather than "passive" earnings or those produced by the debtor's property. This Court does not disagree with *Ballard*'s reading of La. R.S. §13:3881. Clearly the statute was intended to exempt the wages or earnings of an individual generated through his individual labor rather than as products of investment. Louisiana jurisprudence supports this conclusion.[15]

Where *Ballard* ran afoul, was in analogizing the proceeds of a lawsuit to earnings on an asset rather than a substitution for the property lost. Under *Ballard's* reasoning, the proceeds of the suit are merely revenues or products of a nonexempt asset. Thus, the proceeds are also nonexempt.

---

[14] *In re Ballard*, 238 B.R. 610 (Bankr.M.D.La. 1999).

[15] *Legier v. Legier,* 357 So.2d 1203 (La.App. 1978) (Earnings exemption does not apply to accumulated fringe benefits.); *First Nat. Bank of Commerce of Latiker*, 432 So.2d 293 (La.App. 4 Cir. 1983) (Earnings exemption does not apply a trust of vacation and holiday benefits.)*; Brown v. Schwegmann*, 990 So.2d 1282, 2007-0210 (La. App. 4 Cir. 7/30/08) (Earnings exemption does not apply to accumulated fringe benefits.).

5

In coming to this conclusion, the *Ballard* Court attempted to distinguish the *Thompson-Richie* decision because "insurance proceeds were designed, by specific contract, to replace the homestead to the extent of the damage."[16] However, *Thompson-Richie's* holding is much broader. *Thompson-Richie* confirmed that public policy requires exemptions to be read broadly in order to give effect to their intent. *Thompson-Richie* did not rely on a contractual right to payment but that the monies received for a lost exempt asset were a substitute for the asset itself and were within the legislative intent of providing a means of subsistence to the debtor.

*Laurencic v. Jones*[17] also supports this interpretation. In *Laurencic*, the debtor left his job before collecting his paycheck. The *Laurencic* Court held that "termination of employment does not terminate the exempt character of wages then due and owing the employee."[18] The court found that "[t]he clear intent of the present [exemption] statute is that 80% of all wages, whenever paid or whenever due, are exempt."[19]

Applying the reasoning in *Laurencic* to this case, if Mr. Burns lost earnings due to a disability caused by exposure to asbestos, and the court ruled that Mr. Burns is entitled to recover those earnings, the exemption applies to those earnings when paid.[20]

---

[16] *Ballard*, 238 B.R. at 653.

[17] *Laurencic v. Jones*, 180 So.2d 803, 804 (La.App. 4 Cir. 1965).

[18] *Id.* at 804. The Court notes that *Ballard* cited *Laurencic* as providing insight into "disposable earnings," but it did not distinguish or discredit *Laurencic*.

[19] *Id.* As previously stated, LA R.S. § 13:3881 now provides for the exemption of 75%, not 80%, of wages.

[20] In *Laurencic*, had the debtor "abandoned his salary, never intending to claim it, it might not be subject to the exemption." Trustee has shown no intent by Debtors to abandon his salary. On the contrary, Mr. Burns sued to recover his lost earnings.

Analogy can also be made to the "tools of the trade" exemption. In *Skelley v. Accounts Supervision Co.*,[21] the debtor's work truck was damaged beyond use in a collision. It was undisputed that the truck was exempt as a tool of the trade prior to the collision. However, the plaintiff argued that since the truck could not be used anymore, the exemption no longer applied. The court ruled that the truck was still exempt reasoning:

> The law is extremely solicitous of the rights of those to whom it accords exemptions from the seizure and sale of their property. It encourages the protection against want and impoverishment, that, for such exemptions, would, in many cases, befall heads of families of limited earning power. It is extremely reluctant, after conferring its beneficence upon a person coming within its purview, to then deprive him of the benefits and advantages he has earned.[22]

While *Skelley* involved temporary non-use of a tool of the trade, the same reasoning applies here. The purpose of the exemption of 75% of earnings is "to protect debtors and their families from financial destitution and to protect the public from the necessity of providing for them as public charges."[23] Disallowing the exemption on an award for loss of earnings for a person who, through no fault of his own, was unable to actually work for those earnings would be contrary to the purpose of the exemption.

*Ballard* is also distinguishable because it involved a claim for loss of earning *capacity*,[24] while Debtors' lawsuit is for wages actually lost.

> In many instances, lost earning capacity and lost future earnings are different elements of damages. Earning capacity is not necessarily determined by actual loss;

---

[21] *Skelley v. Accounts Supervision Co.*, 53 So.2d 520 (La.App. 2 Cir. 1951).

[22] *Id.* at 522.

[23] *In re McCollum*, 348 B.R. 377, 381 (Bankr.E.D.La.), *aff'd*, 363 B.R. 789 (E.D.La. 2007).

[24] *Ballard*, 238, B.R. at 636.

damages may be assessed for what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. Such damages are calculated on the person's ability to earn money rather than on what he actually earned before the injury.[25]

For the reasons assigned, the Court DENIES Trustee's Objection to Exemption. A separate Order will be entered in accord with this ruling.

New Orleans, Louisiana, October 5, 2012.

                                        Hon. Elizabeth W. Magner

                                        U.S. Bankruptcy Judge

---

[25] *Higginbotham v. Ouachita Parish Police Jury*, 513 So.2d 537, 541 (La.App. 2 Cir. 1987).